BANK OF CLEVELAND *v.* RICH.

(Decided January 21, 1929.)

*Messrs. Dunlap, Stephens & Stephens,* for plaintiff in error.

*Mr. Lawrence M. Rich,* for defendant in error.

VICKERY, J. This cause comes into this court on a petition in error to the municipal court of the city of Cleveland.

In the court below M. H. Rich brought an action against the Bank of Cleveland to recover a sum of money that was alleged to be due him from the Bank of Cleveland, as custodian or trustee of funds that had been realized from the sale of the assets of the Cleveland Liberty Bank. It seems that, prior to the events which caused this lawsuit, the Cleveland

Liberty Bank had been in the banking business and desired to close up and go out of business, and for that purpose entered into some relation with the Bank of Cleveland, whereby the Bank of Cleveland was to reduce its assets and securities to money, and, when it had procured enough money to pay a 40 per cent. dividend it was to pay such dividend to the holders of certificates of stock, a list of which had been furnished. In that list one Fred Pfeiffer was named as a stockholder and there was a memorandum to the effect that the bank was not to pay Fred Pfeiffer.

It seems that Fred Pfeiffer had been quite a heavy stockholder in the Cleveland Liberty Bank, and owed it sums of money, among which was a note of $5,000, and the Bank of Cleveland had purchased outright and become the owner of this $5,000 note.

Now prior to the events complained of here, Rich had become the owner of 25 shares of stock that theretofore had been owned by Pfeiffer, and Pfeiffer had assigned and delivered certain other shares of stock in the Cleveland Liberty Bank to secure the loan that he had procured from the bank, and I presume it turned over a certain number of shares of stock to the Bank of Cleveland, but that is immaterial. Anyway, the Bank of Cleveland became the owner absolutely of this $5,000 note, and, when Rich presented certain shares of stock that at one time belonged to Pfeiffer to be liquidated in accordance with the terms of liquidation, the Bank of Cleveland refused to pay him the money, and he brought his action in the municipal court, the case being within the jurisdiction of the municipal court. Upon the trial of the case he recovered a sum of money equiv-

alent, I take it, to 40 per cent. of the face of the stock that he owned.

Error was prosecuted from that judgment to this court, and the theory of learned counsel seems to be that the municipal court had no jurisdiction, because, as he alleges, it was an equity case, and only a court of general equity jurisdiction could properly handle such case and fully protect both parties, and that is the argument that has been made in this court, and practically the sole argument. That the municipal court is not a general court of equity we must concede, but is the question that is involved in this case one in equity? The Cleveland Liberty Bank was going into liquidation. It had funds sufficient to pay 40 per cent. upon the common stock. Certain of the stock was owned by Rich, and it had been transferred to him by assignment, but had not been transferred to Rich upon the books of the bank, but there is no question here that Rich owned the certificates of stock, and was asking, upon these certificates of stock, to have paid to him his proportion of the money that had been collected for disbursement among holders of certificates of stock of the Cleveland Liberty Bank. That was refused. Then the action simply became one for money only, and, even though Rich's name did not stand upon the books of the Cleveland Liberty Bank as a stockholder, the question became one of proof on the trial, and if he was the owner of these shares of stock, and they had not been put up as collateral security, and the proof shows that they had not, for they were in his possession, he was entitled to recover upon them. They were simply certificates of indebtedness, and indicated the share which he was entitled to out of

the fund realized for that purpose from the assets of the Liberty Bank.

Now it must be remembered that these shares of stock owned by Rich had not been put up as collateral to secure the loan which Pfeiffer had borrowed from the Cleveland Liberty Bank, part of which loan, if not all, had been purchased by the Bank of Cleveland. It must also be remembered that Rich did not owe the Bank of Cleveland anything. If Pfeiffer himself had brought this action on stock that was owned by him, the Bank of Cleveland might have set up a counterclaim, or set-off against the claim to the extent of the note that it held against him, but apparently before this note had been assumed by the Bank of Cleveland, Rich had become the owner of these certificates of stock, and we know of no law which would prevent a person from becoming the owner of certificates of stock, even if they are not transferred upon the books of the corporation. If the Cleveland Liberty Bank was a going concern, and Rich wanted to have the stock transferred, so as to be in his name, in order to draw dividends, he might have been compelled to go into a court of equity in order to have his name entered upon the books, but that is not the situation here. The Bank of Cleveland did not own this money; it was simply a naked liquidating trustee, and it had no right to keep that money back from Rich, in order to appropriate it to a claim it held against Pfeiffer. The Cleveland Liberty Bank itself undoubtedly would not have a right to do this; inasmuch as it took as collateral some of the certificates of stock, but did not take these, it would have no right to sequester these that were not put up for a

loan, but as a matter of fact were owned by another person. To illustrate: If I go to the Union Trust Company and borrow $5,000 of money, and put up some certificates of stock that I own in the Union Trust Company as collateral to that loan, and I have other shares of stock in the Union Trust Company which I sell to some one else, the Union Trust Company cannot appropriate those shares of stock that belong to some one else to pay my debt to it. It would have a personal judgment against me for anything over and above the collateral that I had put up, but it could not reach other stock that I owned in the Union Trust Company, especially without some proceeding in garnishment, or proceeding in aid of execution, and surely not where I had transferred that stock to some one for value before that time.

It seems to me the fact is perfectly clear that there is no equity question in this case. It is simply a plain law question. When Rich brought his action to recover the amount of money that was due him as distributee of the 40 per cent. that was ordered paid to the stockholders, upon his proof of the ownership of his stock he was entitled to recover, and the question became only a matter of proof, and, undoubtedly, the proof having been rendered to the satisfaction of the court, the judgment thereon would follow as a matter of course.

Not seeing any error in this record that would warrant a disturbance of the judgment, it will be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and LEVINE, J., concur.